DANIEL CONSTRUCTION COMPANY, SHEARON HARRIS PROJECT, NEW
HILL, NORTH CAROLINA v. JOHN C. BROOKS, COMMISSIONER OF LA-
BOR OF NORTH CAROLINA

No. 8310SC1228

(Filed 5 March 1985)

**1. Master and Servant § 114— OSHA violation—failure of employer to require
safety-toe shoes—standard of proof—use of industry practice**

The superior court correctly affirmed the Occupational Health and Safety
Review Board where the Review Board's decision was supported by substan-
tial evidence that a reasonably prudent employer would have recognized that
carrying heavy objects above unprotected feet was hazardous to employees
and would have required safety-toe shoes. The practice of the industry was
but one circumstance to consider. G.S. 150A-51(5).

**2. Master and Servant § 114— OSHA violation—failure of employer to require
safety-toe shoes—expert testimony and site history disregarded**

The superior court correctly affirmed the Occupational Health and Safety
Review Board's decision that defendant violated construction safety standards
by not requiring safety-toe shoes, despite expert testimony that carrying the
heavy objects involved here was not hazardous and despite the fact that no
employee at the locations involved here had been injured by dropping such an
object on his foot. The circumstances of this case were not such that only ex-
perts could make deductions from them; it is a matter of common knowledge
that people carrying objects can, and sometimes do, drop them and that an ob-
ject weighing 350 pounds if dropped on an unprotected foot can seriously in-
jure it.

APPEAL by respondent Daniel Construction Company from
*Martin, John C., Judge.* Judgment entered 13 July 1983 in
Superior Court, WAKE County. Heard in the Court of Appeals 20
September 1984.

This appeal concerns a decision of the Occupational Safety
and Health Review Board of North Carolina (OSHRB), which de-
termined that Daniel Construction Company is in violation of a
certain federal construction safety standard, made applicable to
North Carolina by the Occupational Safety and Health Act of

Daniel Construction Co. v. Brooks

1973, G.S. 95-126, *et seq.*, and directed Daniel to thereafter comply with it. Appellant, Daniel Construction Company (Daniel), is constructing an electrical power generating plant for Carolina Power & Light Company at its Shearon Harris facility in New Hill. As the result of an inspection by the North Carolina Department of Labor, Occupational Safety and Health Division (North Carolina OSHA), Daniel was cited for allegedly violating 29 CFR Sec. 1926.28(a) by failing to require employees working in "Laydown Yard Number Three" and the "Ironworker Fabrication Shop" to wear steel-toed shoes. Daniel contested the citation and an evidentiary hearing was held before a hearing examiner of the North Carolina Occupational Safety and Health Review Board. After considering all of the evidence and the briefs of the parties, the hearing examiner vacated the citation on the grounds that complainant failed to prove by "clear, cogent and convincing evidence" that a hazardous condition existed which required the use of steel-toed shoes. North Carolina OSHA appealed to the Review Board, which reversed the hearing examiner and affirmed the citation. Daniel then appealed the decision of the Review Board to the Wake County Superior Court, where an order was entered affirming the decision of the Review Board. Daniel's appeal here is from that order.

The alleged violation, designated "serious," was described as follows:

Safety toe footwear not being provided for or used by employees lifting, carrying and handling heavy construction materials such as concrete forms and structural steel or metal products in laydown yard number three and iron worker fabrication shop on job site.

The federal safety standard in question, 29 CFR 1926.28(a), provides as follows:

The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates the need for using such equipment to reduce the hazards to the employees.

The hearing examiner found and the Review Board adopted the following findings of fact:

3. During the inspection, the Safety Officer in regard to . . . [the failure of the employees to wear safety toe shoes], observed the following:

a. In Lay Down Yard No. 3, employees of respondent were lifting prefabricated material that varied in size from one-foot square to four feet by eight feet, constructed of three-inch steel channel with two and one-half-inch angle iron frames and covered with three-quarter-inch plywood. The weight of objects being moved by said employees varied from 25 to 350 pounds, and said objects were lifted by hand and carried two to three feet above the employees' toes for distances of 30 feet or more. Six employees were sometimes required to carry the heavier panels.

b. Also in Lay Down Yard No. 3, employees of Respondent were observed carrying strong backs (stiffeners) weighing approximately 12 pounds per foot and varying in length from eight to 20 feet, and being carried by employees either at waist height or on the employees' shoulders.

c. In the Iron-Worker Fabrication Shop, structural steel products were being fabricated and moved by hand and sometimes more than one person was needed to lift the materials. Steel plates one to one and one-half inches thick were being fitted with one and one-half to two-inch bolts approximately 20 inches long, and the plates were moved by three employees, including Foreman Earl Brown, and carried approximately 20 feet.

d. One employee in Lay Down Yard No. 3 was wearing safety toe shoes and no employees in the Iron-Worker Fabrication Shop were wearing safety toe shoes.

e. Safety toe shoes were not required by Respondent to be worn by its employees, either in Lay Down Yard No. 3 or the Iron-Worker Fabrication Shop.

f. Ten employees worked in Lay Down Yard No. 3 and all of said employees carried forms in the course of their employment.

g. 18 to 22 employees worked in the Iron-Worker Fabrication Shop and all of said employees were required to

lift structural steel in the course of their employment on an average day.

h. If the materials being carried by the employees in Lay Down Yard No. 3 and the Iron-Worker Fabrication Shop were dropped on the toes of employees, the type of injury that would likely result would be severe laceration, fracture, or amputation of a toe or foot.

4. Approximately 3,600 employees are employed by Respondent on the job site, and Respondent does not require safety toe shoes. It is up to the individual employee, whether he wants to wear safety toe shoes or not. Respondent does have a payroll deduction plan enabling employees to have the cost of safety toe shoes deducted from their pay. Respondent encourages its employees to wear safety toe shoes. Hard hats are required to be worn in all areas and are issued and paid for by Respondent.

5. Respondent has had only one accident involving injuries to an employee's toe, in which an employee's toe was amputated, but if said employee had been wearing safety toe shoes, his toe still would have been amputated and said accident did not occur in either Lay Down Yard No. 3 or in the Iron-Worker Fabrication Shop.

6. Respondent issued a "Construction Safety Handbook" to its employees which states, "Approved Safety shoes are available at cost on some projects. You are encouraged to wear them at all times."

7. Safety toe shoes were sold on the job site by a vendor and shoes without steel toes were not sold.

8. Many employees wore safety shoes which were not equivalent to safety toe shoes.

In reversing the decision of the hearing examiner, the Review Board noted that recent court decisions, not available to the hearing examiner when his decision was made, have established that the burden of proof in safety standard violation cases is that of the preponderance of the evidence, instead of the clear, cogent and convincing standard used by the hearing examiner, and concluded that OSH had carried the lighter burden. Upon

reviewing the matter, the Superior Court found from the "entire record" that there was substantial evidence to support the decision made.

*Attorney General Edmisten, by Assistant Attorney General Ralf F. Haskell, for the State.*

*Thompson, Mann and Hutson, by Carl B. Carruth, pro hac vice, and George J. Oliver, for respondent appellant.*

PHILLIPS, Judge.

[1]  Though stated differently in the appellant Daniel's brief, the only question presented by this appeal is whether the Superior Court erred in affirming the decision of the Occupational Safety and Health Review Board of North Carolina to the effect that appellant's failure to require its employees to wear safety shoes while carrying heavy objects violated 29 CFR 1926.28(a). As directed by G.S. 95-141, the Board's decision was reviewed by the court in accordance with the provisions of Chapter 150A of the General Statutes. The standard contained therein, which the court correctly followed, in our opinion, was the "entire record" test set forth in G.S. 150A-51(5), which our Supreme Court and this Court have explained many times. *See* the much cited and quoted case of *Thompson v. Wake County Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977). Considering the record as a whole in accord with the principles stated in *Thompson*, we are of the opinion that the Review Board's decision is supported by substantial evidence, as the Superior Court ruled, and therefore affirm the judgment appealed from.

In order to establish that Daniel violated 29 CFR 1926.28(a) as charged in the citation, OSH had to prove that under the circumstances which existed a reasonably prudent employer would have recognized that carrying heavy objects above their unprotected feet was hazardous to the employees doing the carrying and would require them to wear safety toe shoes. *Ray Evers Welding Co. v. OSHRC*, 625 F. 2d 726 (6th Cir. 1980). Though this is but an adaptation of the "reasonable man" standard of the common law, neither this Court nor our Supreme Court, according to our research, has yet stated the factors that may be considered in applying the standard in cases like this. For example, the Fifth Circuit has apparently interpreted 29 CFR 1926.28(a) "to require

only those protective measures which the knowledge and experience of the employer's industry, which the employer is presumed to share, would clearly deem appropriate under the circumstances." *B&B Insulation v. OSHRC*, 583 F. 2d 1364, 1367 (5th Cir. 1978). Under this interpretation, as we read it, each industry is permitted to evaluate the hazards associated with its own operations and determine what, if anything, to do about them. But as applied by the First and Third Circuits, the practice in the industry is but *one* circumstance to consider, along with the other circumstances, in determining whether a practice meets the reasonable man standard. These courts have noted, quite properly we think, that equating the practice of an industry with what is reasonably safe and proper can result in outmoded, unsafe standards being followed to the detriment of workers in that industry. *Voegele v. OSHRC*, 625 F. 2d 1075 (3d Cir. 1980); *General Dynamics v. OSHRC*, 599 F. 2d 453 (1st Cir. 1979). This latter application is much the sounder, we think, and we adopt and employ it in this case.

[2] Daniel contends, however, that regardless of the standard used the evidence fails to show that any employee injuries will be prevented by safety toe shoes; and it stresses as conclusive the opinion testimony of several witnesses, all of whom had some experience in construction work or job safety, to the effect that carrying the heavy objects referred to was not hazardous to the employees involved and safety toe shoes are not needed by them. But the circumstances involved in this case are not such that only experts can make deductions from them. Some things are a matter of common sense and knowledge and in this instance we believe that the Board was at liberty to make its own deductions from the circumstances recorded and that the deductions made were justifiable, notwithstanding the expert testimony to the contrary. From the nature of things the case is largely governed by its own circumstances and the many cases cited by the parties on this issue are of little or no assistance. Things that are obviously so just as a matter of common sense do not require the support of either legal citations or expert testimony.

It is a matter of common knowledge, we believe, that people carrying objects can, and sometimes do, drop them and that an object weighing 350 pounds if dropped on an unprotected foot can seriously injure it. Daniel argues, though, that since no employee

at the locations involved has been injured by dropping such an object on his foot, future injuries of that kind are not reasonably foreseeable and preventive measures are therefore unnecessary. This simply amounts to the claim that there is no good reason to anticipate an accident until at least one has already occurred, which is nonsense. Human error is not a rare phenomenon. A mark of ordinary prudence, we believe, is to anticipate human errors that are likely to injure people, such as dropping heavy objects on themselves, and take reasonable precautions against them before, rather than after, injuries occur. The preventive measure that prudence requires in this instance, as is so often the case, is both simple and inexpensive. According to the evidence safety toe shoes, which are available on the job site at a cost of $32 to $48 a pair, can be obtained by or furnished to each of the thirty-two employees that need them at a total cost of as little as $1,024—a trifling sum when compared to the cost of just one mutilated or amputated foot.

For the reasons stated the judgment appealed from is affirmed.

Affirmed.

Chief Judge HEDRICK and Judge BECTON concur.