JOHN C. BROOKS, COMMISSIONER OF LABOR OF NORTH CAROLINA, COM-PLAINANT v. REBARCO, INC., RESPONDENT

No. 8810SC197

(Filed 4 October 1988)

1. **Master and Servant § 114— existence of recognized hazard—application of reasonable man standard proper**

    The OSHA Review Board acted properly in applying the "reasonable man" standard in determining whether a "recognized hazard" existed in respondent's workplace under N.C.G.S. § 95-129(1).

2. **Master and Servant § 114— method of bracing concrete forms—recognized hazard—employer's knowledge—sufficiency of evidence**

    Evidence that the practice of respondent, a concrete and steel reinforcing subcontractor, was to remove a crane from a concrete form before attaching all braces to the form, that the braces assured that the form was perpendicular to the floor and added stability, that forms lost stability when a worker scaled them to attach the braces and extra workers were stationed at the base of the form to provide support when an employee was on the column, that the form would not have tipped over had the crane been attached, and that respondent, during required safety meetings, warned workers about sudden movements when working on the columns was sufficient to show that respondent's practices presented a hazard; respondent was aware of the hazard; and a reasonably prudent person would consider respondent's practices a hazard. Such findings supported the OSHA Review Board's conclusion that respondent's practice was a "recognized hazard" under N.C.G.S. § 95-129(1).

3. **Master and Servant § 114— recognized hazard in workplace—existence of means to abate hazard—sufficiency of evidence**

    Evidence was sufficient to support the OSHA Review Board's finding that feasible and effective means existed to abate a hazard in respondent's workplace by keeping a crane attached to a concrete form while bracing was completed, rather than removing the crane after only one brace was in place, and the Board's decision citing respondent for a violation of N.C.G.S. § 95-129(1) was binding, even though there was evidence that exclusive use of the crane for the additional time it would take to complete the bracing of the forms would be cost prohibitive.

**4. Master and Servant § 114— recognized hazard in workplace—foreseeability of injury—sufficiency of evidence**

Evidence was sufficient to support the OSHA Review Board's finding that it was foreseeable that the hazard in this case could result in serious injury or death, and respondent failed to sustain its burden of proof with respect to its defense that the employee's reckless behavior caused the accident.

**5. Master and Servant § 114— failure to maintain safe electrical plugs and extension cords—employer as owner of plugs—sufficiency of evidence**

Evidence was sufficient to support the OSHA Review Board's conclusion that respondent violated 29 CFR 1926.402(a)(4) by failing to maintain safe electrical plugs and extension cords where such evidence tended to show that the cords and plugs in question were in an exposed area, open to inspection, and in fact used by respondent's employees; furthermore, whether respondent owned the plugs was not the determinative factor, since an employer in a multi-employer work site is expected to make reasonable efforts to detect and abate any violation of safety standards of which it is aware and to which its employees are exposed despite the fact that the employer did not commit the violation.

APPEAL by respondent from *Bowen (Wiley F.), Judge.* Order entered 29 October 1987 in Superior Court, WAKE County. Heard in the Court of Appeals 30 August 1988.

Respondent is a North Carolina corporation doing business as a concrete and steel reinforcing subcontractor. On 15 July 1983, respondent's employee, Larry Daniel Stout, was killed when a 14-foot-high, 400-pound concrete form from which he was suspended tipped over and fell on him. At the time of this incident, respondent was involved in the construction of the Johnston County Memorial Hospital in Smithfield, North Carolina. On 18 July 1983, Tim Childers, a safety officer with the Occupational Safety and Health Division of the North Carolina Department of Labor, visited the construction site to investigate the accident. As a result of the investigation, Childers recommended that two citations be issued against respondent. He recommended that respondent be cited for a violation of 29 CFR 1926.701(a)(1) which required that formwork and shoring be designed, erected, supported, braced and maintained in a manner which would safely support lateral and vertical loads. Childers discovered electrical extension cords had been pulled loose from the plug cover causing strain on the terminal wire, and further recommended that a citation be issued for a violation of 29 CFR 1926.402(a)(4) (as it existed in 1983) which required use of attachment plugs that could endure rough

use and have cord grips to prevent strain on the terminal screws. On 26 August 1983, the citation alleging a violation of 29 CFR 1926.701(a)(1) was amended to allege in the alternative a violation of G.S. 95-129(1). Respondent was assessed a penalty of $420.00 for the formwork and shoring violations.

On 31 August 1983, respondent filed a notice to contest the citations and proposed penalty with the Occupational Safety and Health Review Board (Review Board). On 7 February 1985, a hearing examiner filed an order affirming the issuance of both citations and the proposed penalty. However, he concluded that 29 CFR 1926.701(a)(1) did not apply to the work in which respondent was engaged when the accident occurred. On 7 March 1985, respondent petitioned for review of the hearing examiner's order with the Review Board. The Board affirmed the examiner's decision on 6 December 1985. On 8 January 1986, respondent filed a petition in the Superior Court of Wake County requesting judicial review. The Superior Court entered an order on 29 October 1987 affirming the Review Board's decision. Respondent appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Melissa L. Trippe, for appellee.*

*Johnson, Gamble, Hearn & Vinegar, by Richard J. Vinegar and Kathleen M. Waylett, for respondent-appellant.*

SMITH, Judge.

Briefly, we outline the construction practices which constitute the basis of the formwork and shoring violation involved in this case. At the time of the incident, respondent was in the process of constructing concrete columns. This process involves erecting a hollow steel-framed form into which concrete is poured. The form, in this case a 14-foot-high, one-foot-wide, 400-pound form, was set in place by a crane. It was placed over steel rebar (cylindrical steel rods) which protruded from the floor and over wire mesh both of which extended the length of the form. After the form was set in place by a crane, a worker would scale the side of the form, attach his safety belt, and nail into the form one of several four-inch by four-inch (4" × 4") braces. The worker would then unhook the crane and nail into the form the remainder of the braces. The process of securing these braces took only a few minutes to complete. The braces were attached to provide

stability and assure that the form was perfectly perpendicular to the floor. Additional workers were stationed at the base of the form to stabilize the column and provide assistance to the worker on the form. The Review Board found that respondent's practice of having an employee climb the form and unhook the crane before all the braces were in place rendered the form temporarily unstable and exposed employees to a hazard of the form tipping.

Respondent brings forth as its sole assignment of error the trial court's affirmance of the Review Board's decision upholding the safety violations. It raises the following four issues in its brief:

1. Whether the Board properly interpreted the phrase "recognized hazard" as that phrase is used in G.S. 95-129(1) . . .;

2. Whether there is substantial evidence in view of the entire record . . . to affirm the alleged . . . violation under G.S. 95-129(1);

3. Whether there is substantial evidence in view of the entire record . . . to support the Board's affirmance of a . . . violation of 29 CFR 1926.402(a)(4); and

4. Whether the decision of the Board is arbitrary and capricious.

Unless provided for by specific statute, judicial review of administrative decisions is governed by Chap. 150B, Art. 4. G.S. 150B-43. The standard for review is set forth in G.S. 150B-51(b) and states in pertinent part:

[T]he court reviewing a final decision may affirm . . . or remand . . . . It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are . . .

(4) Affected by other error of law;

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or

(6) Arbitrary or capricious.

The proper standard to be applied depends on the issues presented on appeal. Our courts have held that if it is alleged that an agency's decision was based on an error of law then a *de novo* review is required. *Brooks, Comr. of Labor v. Grading Co.*, 303 N.C. 573, 281 S.E. 2d 24 (1981). " 'When the issue on appeal is whether a state agency erred in interpreting a statutory term, an appellate court may freely substitute its judgment for that of the agency and employ *de novo* review.' " *Id.* at 580-81, 281 S.E. 2d at 29, *quoting Savings and Loan League v. Credit Union Comm.*, 302 N.C. 458, 465, 276 S.E. 2d 404, 410 (1981). A review of whether an agency decision is supported by sufficient evidence requires the court to apply the "whole record" test. *Thompson v. Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977). The "whole record" test is also applied when the court considers whether an agency decision is arbitrary and capricious. *High Rock Lake Assoc. v. Environmental Management Comm.*, 51 N.C. App. 275, 276 S.E. 2d 472 (1981).

> [T]he 'whole record' rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.

*Thompson*, 292 N.C. at 410, 233 S.E. 2d at 541.

Complainant cites G.S. 95-129(1) as the basis for its citation against respondent for a serious violation. This statute, often referred to as "the general duty clause," states that "[e]ach employer shall furnish to each of his employees conditions of employment and a place of employment free from recognized hazards that are causing or are likely to cause death or serious injury or serious physical harm." This statute closely parallels the federal general duty clause found at 29 U.S.C.A. Section 654(a)(1). Respondent correctly points out in its brief that North Carolina courts have yet to specifically address the interpretation of this clause; therefore, because of the similarity between the state and federal provisions, we turn to federal decisions for guidance. *See Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980)

(Court held that similarity between federal and state FTC statutory provisions allowed state court to seek guidance from federal decisions). Federal courts have held that to successfully prosecute a violation under the "general duty clause" a complainant must show that an employer failed to render its workplace free of a hazard which was "recognized" and causing or likely to cause death or serious physical harm. *National Rlty. & C. Co., Inc. v. Occupational S. & H.R. Com'r.*, 489 F. 2d 1257 (D.C. Cir. 1973).

[1] Respondent first argues that the Review Board's erroneous interpretation of a "recognized hazard" resulted in the application of an inappropriate standard. Incorrect statutory interpretation by an agency constitutes an error of law under G.S. 150B-51(b) and allows this court to apply a *de novo* review. *Brooks, supra.* A "recognized hazard" has been defined as one about which the employer knew or one known about within the industry. *Usery v. Marquette Cement Mfg. Co.*, 568 F. 2d 902 (2nd Cir. 1977). This definition has been conditioned upon a recognition that not all hazardous conditions can be prevented and that Congress, by the absolute terms of the "general duty clause," did not intend to impose strict liability upon employers. Only preventable hazards must be eliminated. *National Rlty. & C. Co., Inc., supra.* Thus, "a hazard is 'recognized' only when the [Commissioner] demonstrates that feasible measures can be taken to reduce materially the likelihood of death or serious physical harm resulting to employees." *Babcock & Wilcox Co. v. Occupational Safety, Etc.*, 622 F. 2d 1160, 1164 (3rd Cir. 1980).

In its decision, the Review Board in this case concluded: "[w]hether or not a hazard exists is to be determined by the standard of a reasonable prudent person. Industry custom and practice are relevant and helpful but are not dispositive. If a reasonable and prudent person would recognize a hazard, the industry cannot eliminate it by closing its eyes." It is respondent's contention that the standard adopted by the Review Board is not the proper standard to apply when considering whether a "recognized hazard" exists under G.S. 95-129(1). Respondent argues that a "recognized hazard" is present when the industry as a whole deems it so.

We conclude that the Review Board applied the correct standard to determine whether respondent failed to render its

workplace free of a "recognized hazard." In *Daniel Construction Co. v. Brooks*, 73 N.C. App. 426, 326 S.E. 2d 339 (1985), a case involving the violation of a specific federal safety standard, our court, after reviewing relevant federal decisions, applied a "reasonable man" standard in considering the safety violation and declared:

> In order to establish that Daniel violated 29 CFR 1926.28(a) as charged in the citation, OSH had to prove that under the circumstances which existed a reasonably prudent employer would have recognized that carrying heavy objects above their unprotected feet was hazardous to the employees doing the carrying and would require them to wear safety toe shoes. Though this is but an adaptation of the "reasonable man" standard of the common law, neither this Court nor our Supreme Court, according to our research, has yet stated the factors that may be considered in applying the standard in cases like this. For example, the Fifth Circuit has apparently interpreted 29 CFR 1926.28(a) 'to require only those protective measures which the knowledge and experience of the employer's industry, which the employer is presumed to share, would clearly deem appropriate under the circumstances.' Under this interpretation, as we read it, each industry is permitted to evaluate the hazards associated with its own operations and determine what, if anything, to do about them. But as applied by the First and Third Circuits, the practice in the industry is but *one* circumstance to consider, along with the other circumstances, in determining whether a practice meets the reasonable man standard. These courts have noted, quite properly we think, that equating the practice of an industry with what is reasonably safe and proper can result in outmoded, unsafe standards being followed to the detriment of workers in that industry. This latter application is much the sounder, we think, and we adopt and employ it in this case.

*Id.* at 430-31, 326 S.E. 2d at 342 (citations omitted) (emphasis in original). We are aware that *Daniel* involves a specific federal safety standard as opposed to the "general duty clause," but the duty imposed upon employers in cases involving a specific safety standard have been found analogous to the duty imposed by the "general duty clause." *General Dynamics v. Occupational Safety*

*& Health*, 599 F. 2d 453, n.7 (1st Cir. 1979). Based on the forego-
ing, we conclude that the standard adopted by the Review Board
in this case was proper.

[2]    Respondent argues that there was insufficient evidence in
view of the entire record to support the Review Board's conclu-
sion that respondent violated G.S. 95-129(1). Specifically, it con-
tends that the evidence failed to show that (1) a "recognized
hazard" existed; (2) respondent was aware of a hazard; (3) the in-
dustry recognized respondent's formwork practices as hazardous;
(4) a feasible alternative existed to respondent's allegedly hazard-
ous practices; and (5) it was foreseeable that respondent's prac-
tices could result in death or serious injury. Additionally,
respondent contends that ample evidence existed that the acci-
dent was the result of the employee's idiosyncratic behavior and
that the Review Board erroneously failed to make a finding to
that effect. A review of the record in this case indicates that
some contradictory evidence exists as to the safety of respond-
ent's practices and the deceased employee's actions which may
have contributed to the accident.

Substantial evidence existed that although one of the pur-
poses of the bracing was to assure that the form was plumb and
perpendicular with the ground, another purpose was to stabilize
the form. Keith Long, an employee of respondent, testified that
the primary purpose of applying the braces was to keep the form
straight, but he acknowledged that they do add additional rein-
forcement. Safety inspector Childers testified that interviews
with respondent's employees revealed that, subsequent to the ac-
cident, there had been discussions about the possibility of keeping
the crane attached to the form in an effort to address the hazard.
Respondent's employees also stated that the purpose of the brac-
ing was to steady the form. Additionally, testimony of long-time
Rebarco employee Hal Warmbrod indicated that the column was
stable without the support of the crane, but that it lost stability
when extra weight (such as a person working on the column) was
placed near the top of it. As a result, extra workers were sta-
tioned at the base of the form to provide support when an
employee was on the column. In a witness statement made to in-
spector Childers during the accident investigation, Keith Long
stated that "when it [the crane] was unhooked, the column started
swaying, and then fell." Further testimony showed that the form

could fall despite the presence of the steel rebar and wire mesh and that had the crane remained attached to the form it would not have tipped over. Evidence was also received that respondent, during required safety meetings, warned workers about sudden movements when working on the columns. This evidence is sufficient to show not only that respondent's practices presented a hazard but also that it was a hazard of which respondent was aware. The evidence also shows that a reasonably prudent man would consider respondent's practices a hazard and supports the Review Board's conclusion that respondent's practice was a "recognized hazard" under G.S. 95-129(1).

[3]   The Review Board further found that feasible and effective means existed to abate the hazard by keeping the crane hooked to the form while the bracing was completed. The Review Board also found that although rental on a crane cost $60.00 per hour, the process of bracing each column took only about two minutes. Testimony to that effect was received at the hearing. However, testimony was also introduced that the exclusive use of a crane for the additional time it would take to complete the bracing of the forms would be cost prohibitive. Despite the contrary nature of the testimony, sufficient evidence does exist to support the Review Board's finding. *See Thompson, supra.* If reliable evidence exists to support the agency's findings and conclusions, its decision is binding. *Dept. of Correction v. Gibson*, 58 N.C. App. 241, 293 S.E. 2d 664 (1982), *rev'd on other grounds*, 308 N.C. 131, 301 S.E. 2d 78 (1983).

[4]   The Review Board also found that it was foreseeable that the hazard in this case could result in serious injury or death. We hold that such a finding is supported by the evidence. The record reveals that a 14-foot, 400-pound steel form fell over and crushed respondent's employee to death. "The fact that an activity in question actually caused one death constitutes at least prima facie evidence of likelihood: 'the potential for injury is indicated . . . by [Stout's] death and, of course, by common sense.'" *Usery*, 568 F. 2d at 910, *quoting in part National Rlty. & C. Co., Inc.*, 489 F. 2d at 1265 n.33.

It is respondent's contention that Stout's own idiosyncratic behavior in swinging himself suddenly from one side of the form to the other caused it to fall and that respondent's duty as an

employer to provide a safe working environment does not extend to such behavior. While we agree with respondent's latter point, we are unable to agree with its former assertion. It is undisputed from the testimony that Stout made a sudden, unannounced movement on the form. However, testimony describing the movement ranged from "swinging wildly" to "sudden shift of his [Stout's] weight." It is also unclear from the record whether Stout's actions were the result of his own wilful and reckless behavior or the result of a loss of footing. What the testimony shows is that Stout had previous experience climbing the forms and had never engaged in reckless behavior. Further, the testimony revealed that Stout had been warned against making sudden movements while working on the forms. From the foregoing, we hold that the Review Board's conclusion that respondent failed to sustain its burden of proof with respect to its defense that Stout's reckless behavior caused the accident was correct. Our courts, in applying the "whole record" test, have noted that "[t]he 'whole record' test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views." *Thompson*, 292 N.C. at 410, 233 S.E. 2d at 541. Therefore, after considering the entire record, we hold that the evidence is sufficient to support the Review Board's conclusion that respondent violated G.S. 95-129(1) and that the trial court's affirmance of the Review Board's decision was proper.

[5]   We next address respondent's contention regarding the violation of 29 CFR 1926.402(a)(4). Specifically, respondent alleges that there was sufficient evidence to show that the plugs and extension cords in question did not belong to respondent and that it took extensive measures to maintain its own electrical equipment. Again, testimony in the record is conflicting as to whom the equipment belonged. Childers testified that the cords in question were in plain sight and that he was told by employee Hal Warmbrod that respondent owned the cords. However, employee Roger Bowder testified that respondent did not own the cords and that respondent had just completed maintenance of its own cords.

Whether respondent *owned* the plugs and cords is not the determinative factor in this case. The general rule as to employer culpability for safety violations is that each employer is responsible for the safety of his own employees. Grossman Steel and Aluminum Corp., 1976-76 O.S.H. Dec. (CCH) paragraph 20,691

(May 12, 1976). However, this rule has been modified in cases involving multi-employer work sites. *Id.* An employer is expected to make reasonable efforts to detect and abate any violation of safety standards of which it is aware and to which its employees are exposed despite the fact that the employer did not commit the violations. *Id.*

The evidence here tended to show that the cords and plugs in question were in an exposed area, open to inspection and in fact used by respondent's employees. It was further shown that respondent had instructed its employees to replace, as warranted, cords which it owned. Regardless of the ownership of the cords and plugs, respondent could have reasonably discovered and corrected the violation. Therefore, the Review Board's finding that respondent violated 29 CFR 1926.402(a)(4) is supported by the evidence.

Finally, we address respondent's contention that the court's order was arbitrary and capricious. In making such a determination, the "whole record" test is utilized. *High Rock Lake Assoc., supra.* A review of this record fails to reveal that the Review Board's actions were arbitrary and capricious. On the contrary, the Review Board's detailed findings and conclusions indicate a thoughtful consideration of the evidence. Respondent's assertion that the agency's decision was made to "make an example of Rebarco" is not supported by the record.

For the foregoing reasons, the trial court's order is affirmed.

Affirmed.

Judges EAGLES and ORR concur.