JANICE HARDING v. NORTH CAROLINA DEPARTMENT OF CORRECTION

No. 9110SC386

(Filed 2 June 1992)

### State § 12 (NCI3d) — correctional officer — leave without pay — refusal to reinstate — improper dismissal

Petitioner was wrongfully dismissed as a correctional officer both substantively and procedurally where she was placed on leave without pay status for "approximately two months" on 2 April 1987 after she had hip replacement surgery and exhausted her sick and vacation leave; in September 1987 the Department of Correction received a "return to work" notice from petitioner's doctor stating that she was ready to return to light duty, full-time work with certain restrictions; the Department of Correction informed petitioner by letter dated 22 October 1987 that it was unable to accommodate light duty work in her situation, could not reinstate her, and was terminating her from that date; and nothing in the record indicates that, at the time of petitioner's notice of return to work, the Department of Correction considered her to have resigned. Since petitioner gave written notice of her intention to return to work at least thirty days before expiration of her leave without pay, the Department of Correction was required to reinstate her and could discharge her only upon a finding of just cause pursuant to N.C.G.S. § 126-35 after the procedures required by that statute and the rules and regulations implementing that statute had been followed.

### Am Jur 2d, Civil Service § 76.

APPEAL by respondent from order entered 22 January 1991 by *Judge George R. Greene* in WAKE County Superior Court. Heard in the Court of Appeals 17 February 1992.

In December 1987, petitioner filed a petition for a hearing to review the adverse personnel action of respondent Department of Correction (DOC). Following a hearing, the administrative law judge on 30 June 1989 filed his recommended decision that the personnel action be reversed. The State Personnel Commission considered the recommended decision of the administrative law judge, and on 27 December 1989 issued its decision and order, ordering DOC's decision to separate petitioner to remain undis-

turbed. Petitioner then filed this action for judicial review of the final decision of the State Personnel Commission. Following a hearing, on 22 January 1991 the trial court reversed the decision and order of the State Personnel Commission and ordered that petitioner be reinstated with back pay.

From this order, respondent appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Valerie L. Bateman, for respondent-appellant.*

*Marvin Schiller for petitioner-appellee.*

ORR, Judge.

The issue on appeal is whether the trial court erred in reversing the decision of the State Personnel Commission and ordering that petitioner be reinstated with back pay. For the reasons below, we affirm the order of the trial court.

Petitioner was employed at the North Carolina Correctional Center for Women. She called in sick on 31 December 1986, did not return to work, and had hip replacement surgery the following February. From 5 January to 30 March 1987 she was allowed to exhaust her sick leave and vacation leave. After 30 March 1987, she was placed on leave without pay status for "approximately two months." Because she was unable to work, petitioner received disability benefits.

On 24 September 1987, petitioner's doctor sent DOC a notice stating that petitioner was able to return to work for full-time light duty as long as she avoided heavy lifting, repetitive bending, lifting or stooping, prolonged walking, standing, climbing, stooping or crawling, and overuse of the injured limb and that she could progress her activity to full duty slowly which was estimated at six to eight months with some permanent restrictions. Between 25 September and 22 October 1987, DOC discussed petitioner's condition with petitioner and her doctor. On 22 October 1987, DOC notified petitioner that it would not reinstate her but would give her strong consideration for re-employment when she was able to work without restrictions.

In her petition for review of the adverse personnel action, petitioner alleged age and handicap discrimination and that her termination was without procedural and substantive due process

**HARDING v. N.C. DEPT. OF CORRECTION**

[106 N.C. App. 350 (1992)]

including failure to provide a pre-termination hearing. The allegations of discrimination were dismissed as untimely prior to the hearing.

Following a hearing, the administrative law judge made findings of fact. In his conclusions of law, he stated in relevant part:

> 2. . . . Based upon the evidence presented, I do not think the Respondent acted justly, impartially or fairly in separating the Petitioner for she had received no oral or written warnings, employees with similar situations had been accommodated in the past, and she was willing to return to work with no desire to resign. She continued to be a permanent state employee while taking leave without pay. She was therefore entitled to be reinstated as a correctional officer or placed in another suitable position at the termination of leave without pay. Upon reinstatement, Petitioner will have to perform required duties of the position or suffer termination through the progressive warnings process which was lacking in this case.

The Commission, in declining to adopt the administrative law judge's recommendations, adopted his findings of fact but rejected his second conclusion of law and added four of its own conclusions of law. The Commission concluded that DOC did not administer its leave without pay policy unfairly. Further, the Commission stated in its conclusions of law the following:

> 4. . . . State Personnel policy dealing with the separation of an employee defines the procedural safeguards imposed upon management. Where an employee is separated for disciplinary reasons, (job performance, personal conduct) the policy requires a showing of just cause. In separations such as in the instant case the policy is not to be interpreted to impose upon management an obligation to follow a disciplinary process for a non-disciplinary separation. It would be unreasonable to require an agency to give an employee an oral, written and final written warning, where the employee is separated due to inability to perform the job responsibilities required of the position. This is inapplicable to the job performance category of disciplinary dismissal, where the employee is incapable of performing the work due to a lack of knowledge, understanding or ability. This addresses situations as in the present case where the employee is incapable of performing duties and responsibilities because of injury.

**HARDING v. N.C. DEPT. OF CORRECTION**

[106 N.C. App. 350 (1992)]

5. After reviewing the statement from Petitioner's doctor and his assessment of her abilities . . ., Respondent determined that Petitioner's particular situation could not be accommodated. Due to the nature of the work required of a Correctional Officer and certain basic security considerations, the Respondent determined that it could not reinstate Petitioner from her leave without pay status and separated her. The separation was not for disciplinary reasons under NCGS 126-35, therefore Petitioner's allegations that she was denied both substantive and procedural due process cannot be substantiated.

Petitioner then sought judicial review. Following a hearing, the trial court in its order stated that it

finds and concludes based upon the whole record that the Petitioner was entitled to the substantive and procedural due process protections, including a meaningful pre-termination hearing, guaranteed permanent state employees pursuant to N.C.G.S. § 126-35 and regulations adopted pursuant thereto, and, therefore, Respondent's dismissal of Petitioner was without either substantive or procedural just cause and without a meaningful pre-termination hearing which is an essential element of procedural just cause, in contravention of N.C.G.S. § 126-35.

The trial court further found that the the administrative law judge's findings of fact and conclusions of law were correct and supported by the evidence and that the Commission's conclusions were not supported by the findings. Then the trial court ordered petitioner be reinstated with back pay, attorneys fees, and benefits of continued state employment.

\* \* \*

The standard of review is governed by N.C. Gen. Stat. § 150B-51(b) (1991). A court in reviewing an agency's final decision may reverse or modify the decision

. . . if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or

(6) Arbitrary and capricious.

N.C. Gen. Stat. § 150B-51(b). Our review is also limited to the assignments of error to the trial court's order. *Watson v. N.C. Real Estate Comm'n*, 87 N.C. App. 637, 362 S.E.2d 294 (1987), *cert. denied*, 321 N.C. 746, 365 S.E.2d 296 (1988).

"The proper standard to be applied depends on the issues presented on appeal. If it is alleged that an agency's decision was based on an error of law then a *de novo* review is required." *Walker v. N.C. Dep't of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). "Incorrect statutory interpretation by an agency constitutes an error of law under G.S. 150B-51(b) and allows this court to apply a *de novo* review." *Brooks v. Rebarco, Inc.*, 91 N.C. App. 459, 464, 372 S.E.2d 342, 345 (1988).

A review of whether the agency decision is supported by sufficient evidence, or is arbitrary and capricious, requires the court to employ the whole record test. *Id.* at 463, 372 S.E.2d at 344. "Agency findings of fact are conclusive if, upon review of the whole record, they are supported by competent, material, and substantial evidence." *In re Humana Hosp. Corp. v. N.C. Dep't of Human Resources*, 81 N.C. App. 628, 633, 345 S.E.2d 235, 238 (1986). Moreover, where respondent did not object to the findings of fact adopted by the Commission at the superior court level, the findings were binding on the trial court and are binding on appeal. *Walker*, 100 N.C. App. at 502, 397 S.E.2d at 354.

The intent and purpose of Chapter 126 of the North Carolina General Statutes is "to establish for the government of the State a system of personnel administration under the Governor, based on accepted principles of personnel administration and applying the best methods as evolved in government and industry." N.C. Gen. Stat. § 126-1 (1991). Pursuant to Chapter 126, the State Personnel Commission has the authority to establish rules and policies governing personnel matters. *N.C. Dep't of Justice v. Eaker*, 90 N.C. App. 30, 34, 367 S.E.2d 392, 395, *disc. review denied*, 322

**HARDING v. N.C. DEPT. OF CORRECTION**

[106 N.C. App. 350 (1992)]

N.C. 836, 371 S.E.2d 279 (1988), *overruled in part on other grounds,* *Batten v. N.C. Dep't of Correction,* 326 N.C. 338, 389 S.E.2d 35 (1990). "The Legislature has delegated, to the extent of the Commission's statutory powers, its own legislative powers over the State's personnel system. Therefore, rules and policies made pursuant to the Commission's statutory authority have the effect of law." *Id.* at 37-38, 367 S.E.2d at 398.

Pursuant to this authority, the Commission established a policy as to leave without pay. Under the policy in effect at the time of petitioner's separation, 30 days before the expiration of the leave without pay, the employee must give notice in writing of an intention to return to work. N.C. Admin. Code tit. 25, r. 1E.1103. If such notice is not given, the employer is not required to reinstate the employee but may do so if "feasible." *Id.* "Failure to report at the expiration of a leave of absence, unless an extension has been requested, may be considered as a resignation." *Id.* "Reinstatement to the same position or one of like status and pay *must* be made upon the employee's return to work unless other arrangements are agreed to in writing. . . ." N.C. Admin. Code tit. 25, r. 1E.1104 (emphasis added). Because this policy has the effect of law, it must be strictly followed. *Eaker,* 90 N.C. App. at 38, 367 S.E.2d at 398.

According to the Office of State Personnel personnel action form dated 30 March 1987 and approved 2 April 1987, petitioner was placed on leave without pay status for "approximately two months." In September 1987 DOC received a "return to work" notice from petitioner's doctor stating that she was ready to return to light duty, full-time work with certain restrictions. In a letter to DOC dated 6 October 1987, petitioner's doctor described her abilities. By letter dated 22 October 1987, DOC informed petitioner that DOC was unable to accommodate temporary light duty work in her situation, was therefore unable to reinstate her, and was separating her as of that date. The Office of State Personnel personnel action form approved 30 October 1987 states as the reason for separation of petitioner: "Resigned—Unable to return from leave without pay."

Pursuant to the required procedures to be followed at the termination of the leave without pay period, DOC was required to reinstate petitioner provided she gave notice in writing 30 days prior to the expiration of her leave without pay. *See* N.C. Admin.

Code tit. 25, r. 1E.1103. Otherwise, DOC was not required to reinstate her but could have done so if "feasible." *See id.* The rules further provide that failure to report at the end of the leave without pay period "may be considered as a resignation." *See id.* However, although ultimately DOC considered petitioner to have resigned according to the personnel action form approved 30 October 1987, nothing in the record indicates that DOC at the time of petitioner's notice to return to work considered her to have resigned. On the contrary, the record indicates that DOC reviewed her medical records in light of her request to return to work but declined to reinstate her. Thus under the applicable rule at the time petitioner stated her intent to return to work, DOC should have reinstated her and DOC's summary dismissal of petitioner was in error.

If, following reinstatement, DOC wanted to discharge petitioner, it could have done so only on a finding of just cause pursuant to N.C. Gen. Stat. § 126-35. *See Batten*, 326 N.C. at 345, 389 S.E.2d at 40 (1990) (holding that even though section 126-35 refers to "disciplinary action," an employee's reallocation to a lower grade pursuant to a managerial reorganization falls under the statute since the "focus of the review is justification of the adverse departmental action."). Moreover, petitioner would also have been entitled to the procedures required under N.C. Gen. Stat. § 126-35 and the rules and regulations implemented thereto which were in effect at the relevant time. *See* N.C. Admin. Code tit. 25, r. 1J.0605 and r. 1J.0606(2) (warnings must be given where an employee is dismissed for performance of duties and a predismissal conference is required).

We conclude therefore that the trial court correctly determined that petitioner was wrongfully dismissed both substantively and procedurally. DOC contends though that it is the Commission's duty to fashion the appropriate remedy not the trial court. However, since we have determined that the rules require petitioner's reinstatement and she would, of course, be entitled to compensation for the time during which she was wrongfully terminated, we conclude that the trial court's action does not constitute error.

For the above reasons, we affirm the order of the trial court.

Affirmed.

Chief Judge HEDRICK and Judge WALKER concur.