**IN RE PROTEST BY ROCKY MIDGETTE**

[117 N.C. App. 213 (1994)]

IN RE: PROTEST BY ROCKY MIDGETTE OF 2 NOVEMBER 1993 MANTEO TOWN ELECTION

No. 9410SC332

(Filed 6 December 1994)

**Elections § 72 (NCI4th)— ballots for write-in candidate—variations of name acceptable—no name written in—ballots unacceptable**

It was possible to determine the voter's choice from ballots containing variations of a candidate's name where the candidate conducted an active campaign and was the only write-in candidate, and those ballots should have been counted; however, it was impossible to determine the voter's choice from ballots with no name written on them but punched in the space for write-in candidates.

**Am Jur 2d, Elections §§ 254 et seq.**

Appeal by Dellerva Collins from order entered 4 February 1994 in Wake County Superior Court by Judge Henry V. Barnette, Jr. Heard in the Court of Appeals 27 October 1994.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Charles M. Hensey, for the State Board of Elections.*

*Tharrington, Smith & Hargrove, by Michael Crowell and Jaye P. Meyer, for Rocky D. Midgette.*

*Thigpen, Blue, Stephens & Fellers, by Cressie H. Thigpen, Jr., and Steven F. Bryant, for appellant Dellerva Collins.*

GREENE, Judge.

Dellerva W. Collins (Ms. Collins) appeals from an order entered 4 February 1994 in Wake County Superior Court, affirming the State Board of Elections' (the State Board) 23 November 1993 decision directing that an additional forty-one votes for write-in candidate Rocky Dillon Midgette (Rocky Midgette) be certified by the Dare County Board of Elections (the County Board) for the 2 November 1993 town election for three seats on the Manteo town board.

On 2 November 1993, the town of Manteo, North Carolina, had a general election to elect three town commissioners by plurality vote. Ms. Collins, Edward C. Etheridge, and Lee Tugwell filed as candidates

**IN RE PROTEST BY ROCKY MIDGETTE**

[117 N.C. App. 213 (1994)]

and were listed on the ballot while Rocky Midgette was a write-in candidate. On 3 November 1993, Rocky Midgette wrote a letter to the chairman and supervisor of the County Board, stating that although 152 votes were attributed to him, "41 ballots were set aside because the precinct could not figure out whether they should be counted or not." He asked the County Board to count the forty-one votes for him.

The County Board met on 4 November 1993 to canvass the votes and determined that thirty-six ballots which were punched in the proper place but did not have a name written on the ballot should not be counted because the directions on the ballot stated that a name must be written in. The County Board also determined that several ballots on which voters wrote "R. Midgette," "Rocky," "Midgette," or some other abbreviation of Rocky Midgette's name should not be counted. The County Board therefore dismissed Rocky Midgette's complaint for lack of probable cause and determined that the official canvass results for town commissioner were 254 votes for Edward Etheridge, 254 votes for Lee Tugwell, 185 votes for Ms. Collins, and 162 votes for Rocky Midgette.

Rocky Midgette filed a complaint with the County Board and protested the following alleged violations and misconduct:

(1) Precinct officials and the Board of Elections refused to count several ballots on which voters wrote "R. Midgette", "Rocky", "Midgette" or some other, similar abbreviations of Rocky Midgette's name. Those votes should have been counted because the voter expressed a clear intent to vote for Rocky Midgette. Although the name was not written out completely and there are other citizens in town named Midgette, no other Midgette was actively seeking the town commissioner's office.

(2) Approximately 36 ballots were rejected and not counted at all because the voter had punched next to place 70 on the punchcard ballot but had not written in Rocky Midgette's name. . . . Because 70 was the place to vote for write-ins, campaign material for Rocky instructed voters to punch next to 70, and there was no other write-in candidate in the election, it is clear that the voters' intent in punching out 70 was to vote for Rocky Midgette.

Rocky Midgette requested that all ballots with a variation of his name and the thirty-six ballots on which place 70 was punched be counted for him and added to his total.

## IN RE PROTEST BY ROCKY MIDGETTE

[117 N.C. App. 213 (1994)]

The County Board held a hearing on 13 November 1993 and by order dated 16 November 1993, made the following findings of fact based on testimony from Rocky Midgette and several voters and the affidavits of several voters:

5. Rocky Midgette ran an active campaign for town commissioner. He set up approximately 500 posters, distributed 1,000 flyers, mailed over 500 postcards to voters, visited homes, ran display ads in the newspaper, spoke at candidates' forum sponsored by League of Women Voters, and had workers telephone voters.

6. Rocky Midgette's campaign material directed voters to cast a write-in vote for him by punching 70 on the ballot and writing in his name.

7. No other person was actively campaigning as a write-in candidate for town commissioner, and no other person named Midgette or Midgett or Rocky was running as a candidate in the town election or otherwise actively seeking votes for town office.

. . . .

10. . . . Each [voting] booth included a plastic holder containing a booklet listing the names of candidates and the number of the space on the ballot to be punched for each candidate.

. . . .

12. Lines 70, 71 and 72 in the booklet were identified as spaces for write-in candidates for town commissioner.

13. The instructions printed on the top of each ballot indicated that to vote for a person whose name is not on the ballot, you were to write in on the ballot in the space provided, the number for the office and the person's name you wanted to vote for.

. . . .

18. One ballot had space 70 punched for a write-in and "Rocky" written on it. Two ballots had space 70 punched for a write-in and had "R. Midgette" written on them. Two ballots had space 70 punched for a write-in and had "Midgette" written on them. These ballots were not counted.

19. On 36 ballots, the voters punched place 70 on the ballot but wrote no name or number on the ballot. Those ballots were not counted.

. . . .

24. At the November 13th hearing, 5 voters testified and 13 voters had affidavits presented which indicated they punched space 70 on their ballots but did not write anything on the ballot itself. These voters indicated that they either mistakenly wrote Rocky Midgette's name in the booklet on line 70 or did not believe it was necessary to write his name anywhere because it was already written in the booklet on line 70.

Based on these findings of fact, the County Board concluded it properly excluded one ballot with space 70 punched and "Rocky" written on it, two ballots with space 70 punched and "R. Midgette" written on them, two ballots with space 70 punched and "Midgette" written on them, and thirty-six ballots with space 70 punched but no name written on them. The County Board therefore dismissed Rocky Midgette's complaint.

Rocky Midgette then appealed to the State Board which, after considering the Board's findings of fact and conclusions of law, all submissions previously distributed to all State Board members, and verbal presentations before the County Board and the State Board, rejected the County Board's order. By decision and order entered 23 November 1993, the State Board ordered that "the 41 questioned votes for write in candidate Rocky Midgette be certified by" the County Board.

On 3 December 1993, Ms. Collins filed a petition with the State Board to reconsider its 23 November 1993 decision; however, on 9 December 1993, the State Board, by letter, informed her that it would not reconsider its decision. On 15 December 1993, Ms. Collins, pursuant to N.C. Gen. Stat. § 150B-43, appealed the 23 November 1993 and 9 December 1993 decisions of the State Board to Wake County Superior Court. On 22 December 1993, she filed an amendment to her petition to except to the failure of the State Board to include findings of fact and conclusions of law "in contravention of N.C.G.S. Section 150A-36" and requested that "the matter be remanded to the State Board . . . for appropriate findings of fact and conclusions of law." On 22 December 1993, she also filed a motion to remand for findings of fact and conclusions of law. By order entered 4 February 1994, the trial court found that the State Board "adopted the findings of fact of the county board and concluded as a matter of law that the additional votes should be counted for Mr. Midgette." The trial court also concluded the State Board "acted within the scope of its authority in determining that the 41 additional votes should be counted for Rocky

**IN RE PROTEST BY ROCKY MIDGETTE**

[117 N.C. App. 213 (1994)]

Midgette," its decision was "supported by substantial admissible evidence in view of the entire record as submitted," and its decision was not "in violation of constitutional provisions, in excess of authority, made upon unlawful procedure, affected by other error of law or arbitrary and capricious." The trial court therefore denied Ms. Collins' appeal and affirmed the State Board's decision.

The issue presented is whether it is impossible to determine the voter's choice from ballots containing variations of Rocky Midgette's name and ballots with no name written on them, but punched in the space for write-in candidates, where Rocky Midgette conducted an active campaign and was the only write-in candidate.

Because Ms. Collins contends the State Board's decision to count the forty-one votes in question was in excess of its statutory authority and was an error of law, *de novo* review is required. *Brooks, Comm'r of Labor v. Rebarco, Inc.*, 91 N.C. App. 459, 463, 372 S.E.2d 342, 344 (1988). N.C. Gen. Stat. § 163-151, which provides for marking ballots in primaries and elections, states that in an election, "if a voter desires to vote for a person whose name is not printed on the ballot, he shall write in the name of the person in the space immediately beneath the name of a candidate, if any, printed on the ballot for that particular office." N.C.G.S. § 163-151 (1991). N.C. Gen. Stat. § 163-170, which governs the rules for counting ballots, provides:

Only official ballots shall be voted and counted. No official ballot shall be rejected because of technical errors in marking it unless it is impossible to determine the voter's choice. In applying the general rule, all election officials shall be governed by the following rules . . . .

(5) Write-In Votes.—If a name has been written in on an official general election ballot as provided in G.S. 163-151, it shall be counted in accordance with the following rules:

a. The name written in shall not be counted unless written in by the voter or a person authorized to assist the voter pursuant to G.S. 163-152.

b. The name shall be written in immediately below the name of a candidate for a particular office, if any, and shall be counted as a vote for the person whose name has been written in for that office . . . .

N.C.G.S. § 163-170 (1994). Under these statutes, while a voter must write in the name of a person not on the ballot in order for the vote to be counted, any technical errors in following this procedure will not make the ballot invalid "unless it is impossible to determine the voter's choice." *See Duke Power Co. v. Clayton*, 274 N.C. 505, 164 S.E.2d 289 (1968) (all parts of same statute dealing with same subject are to be construed together as a whole, and every part must be given effect if this can be done by fair and reasonable intendment). We must therefore determine whether it is impossible to tell the voter's choice for the thirty-six ballots where no name was written in and the five ballots marked "Rocky," "R. Midgette," or "Midgette."

It is unclear under N.C. Gen. Stat. § 163-170 whether or not, in determining if it is impossible to ascertain a voter's choice, a court is to look to the circumstances surrounding an election or only to the specific ballot in question. We agree, however, with the approach taken by other courts, which have dealt with this issue by generally looking to the face of the ballot, and if the write-in candidate's name is on the ballot, but not in exact accordance with mandatory statutory requirements, looking to extrinsic evidence to see if the voter's choice can be determined. "[T]here must be an expression of intent on the ballot, but the ballot is to be read in the light of surrounding circumstances, evidence of which is admissible." *Fifteen Registered Voters on behalf of Flanagan*, 323 A.2d 521, 523 (N.J. Super. 1974) (write-in votes for "Wright" or "Mr. Wright" should be counted for "Harry C. Wright" where evidence showed no other "Wright" sought the office and where "Harry Wright" vigorously campaigned); *see also Meyer v. Lamm*, 846 P.2d 862 (Colo. 1993) (if ballot is substantially marked as law requires, and from such marking, intention of voter, when viewed in light of circumstances surrounding election, can be ascertained, ballot should be counted); *Devine v. Wonderlich*, 268 N.W.2d 620 (Iowa 1978) (candidate's surname sufficient to indicate vote for him where he vigorously campaigned, and it was unlikely to confuse him with others having same surname, none of whom were politically active); 26 Am. Jur. 2d *Elections* §§ 268-72 (1966). Based on this general rule, courts have considered extrinsic evidence to determine a voter's intention where he or she has written in only a surname, where only the middle name of the candidate is wrong, where the first name is abbreviated, or if the wrong initials are used. 26 Am. Jur. 2d *Elections* § 272.

In this election, the thirty-six ballots which have no name written on them do not express an intention of the voter's choice because

they do not contain Rocky Midgette's name, a variation of Rocky Midgette's name, or any name at all, and disregard completely the requirements of Sections 163-151 and 163-170, the instructions on the ballot, and even the instructions Rocky Midgette provided in his campaign. Accordingly, because no name at all was written on these thirty-six ballots, we do not consider any extrinsic evidence in attempting to ascertain voter intent based on the rules articulated above. These thirty-six ballots, therefore, are tantamount to technical errors which make it impossible to determine the voter's choice. The County Board's findings of fact, which the trial court found the State Board adopted, cannot support the conclusion that these thirty-six votes should be counted for Rocky Midgette.

We now consider the one ballot marked "Rocky," the two ballots marked "R. Midgette," and the two ballots marked "Midgette." Because there is some evidence of voter intent on these five ballots, it is appropriate to look at extrinsic evidence. The evidence adduced at the hearing before the County Board, contained in the County Board's findings of fact, indicates that Rocky Midgette ran an active campaign for town commissioner by setting up approximately 500 posters, distributing 1,000 flyers, mailing over 500 postcards to voters, visiting homes, running display ads in the newspaper, speaking at a candidates' forum sponsored by the League of Women Voters, and having workers telephone voters. There was also evidence that Rocky Midgette was the only person actively campaigning as a write-in candidate for town commissioner, and no other person named Midgette or Midgett or Rocky was running as a candidate in the town election or otherwise actively seeking votes for town office. Given these facts, it is not impossible to tell the voter's choice from these five ballots, and the State Board correctly ordered the County Board to count these five votes for Rocky Midgette. *See McIntosh v. Helton*, 828 S.W.2d 364 (Ky. 1992) (write-in votes for candidate could be counted for him even though they only designated him by initials rather than name as statute requires; election commission had given approval to use of initials and only one person with initials in question campaigned for position). For these reasons, the trial court's decision should be affirmed in part and reversed in part. We remand the case to the trial court with directions to reverse the State Board's decision in part and remand to the State Board so that it may order the County Board not to count the thirty-six ballots which did not have a name written in.

**TRULL v. CENTRAL CAROLINA BANK**

[117 N.C. App. 220 (1994)]

Affirmed in part, reversed in part, and remanded.

Judges WYNN and JOHN concur.