BRYANT, Judge.
 

 *416
 
 Where the trial court lacked subject matter jurisdiction to hear an administrative appeal because the agency failed to comply with mandatory notice requirements of the applicable statute, we reverse the judgment of the trial court with instructions to vacate the final agency decision.
 

 Petitioner Jiffy Lube ("petitioner") is a motor vehicle emissions inspection station licensed by the North Carolina Department of Motor
 
 *417
 
 Vehicles ("DMV") pursuant to N.C. Gen.Stat. § 20-183.4A and is located at 1200 Laura Village Drive, Apex, North Carolina 27502. Petitioner employed Jesse Glenn Jernigan, Jr. ("Jernigan") as an inspection mechanic, and DMV approved and licensed Jernigan as an inspection mechanic.
 

 On 18 March 2011, Brenton Land ("Land") of Cary, North Carolina went to Fast Lube Plus on Kildaire Farm Road in Cary to have the annual State inspection performed on his vehicle. At approximately 4:35 PM on that day, Land's vehicle, a 2006 Lexus, was failed for State inspection based on the window tint of the vehicle.
 

 Land then drove his vehicle to petitioner's place of business to have his car inspected again for its annual State inspection. Land believed there to be a person at this location who would pass his vehicle even with the window tint.
 

 When Land arrived at petitioner's place of business, he spoke with an employee about passing the vehicle on the State inspection despite the window tint. Land was told that one of the employees at that location would do so, but that he would not be back in until Monday. The employee then told Land to wait for a minute. While he waited, another employee, Jernigan, approached Land and asked if Land needed a passing inspection on a vehicle with a window tint. Land affirmed that that was what he needed and that the vehicle had failed inspection at another location. Between the two of them, it was agreed that Land would pay $50.00 for Jernigan to pass the vehicle for annual State inspection despite its window tint.
 

 Following his conversation with Jernigan, Land left petitioner's place of business and went to an ATM in an adjoining parking lot. Land took out money from the ATM to pay Jernigan to pass his vehicle. Jernigan then inspected Land's vehicle for State inspection and passed the vehicle despite its window tint. Following the improper inspection, completed around 5:11 PM, Jernigan accepted the $50.00 from Land. Land then paid $30.00 to petitioner for the improper State inspection.
 

 Following these transactions, Inspector Richard M. Ashley ("Inspector Ashley") of the North Carolina Division of Motor Vehicles License and Theft Bureau was assigned an investigation concerning State inspections of a motor vehicle in Wake County. Inspector Ashley received reports showing that a vehicle failed inspection at one location and approximately thirty minutes later passed inspection at a different location. Based on this fact, Inspector Ashley went to speak with Land, the registered owner of the vehicle, and the technician, Jernigan, who performed the passing inspection.
 

 *418
 
 Land informed Inspector Ashley that he had removed the window tint after the failed inspection at Fast Lube. Land was questioned regarding how he got from Cary, where the first inspection took place, to Apex for the second inspection at petitioner's place of business and removed the window tint all in approximately thirty minutes. Land reiterated that he had removed the window tint before the second inspection.
 

 Next, Inspector Ashley went to petitioner's place of business. Upon his arrival, Inspector Ashley spoke with the manager and advised him of why he was there. He then
 
 *82
 
 spoke with Jernigan, who told Inspector Ashley that he remembered the inspection in question and that all of the windows had been down on the vehicle when it pulled up, but that there was no window tint on the back window. Jernigan informed Inspector Ashley that the window tint meter was not working and that he went ahead and passed the vehicle on its State inspection. Jernigan also claimed that no money had exchanged hands for this improper inspection.
 

 Inspector Ashley returned to speak with Land, told Land that he had talked with Jernigan about what happened, and that Land should now tell the truth. Land then admitted that he paid Jernigan $50.00 to pass his car on the State inspection despite the window tint. On 23 March 2011, Land gave a written statement to Inspector Ashley regarding what occurred, admitted to the improper inspection, and stated that he would have his window tint removed from his vehicle. On 24 March 2011, respondent-DMV, through Inspector Ashley, charged both Land and Jernigan criminally, specifically charging Jernigan with felony soliciting for accepting $50.00 from inspection customer Land to pass his 2006 Lexus despite having the windows tinted beyond legally approved levels.
 

 On 25 March 2011, Jernigan gave a written statement to Inspector Ashley, wherein Jernigan admitted that he had accepted $50.00 to pass Land's vehicle for State inspection. As a result of the incident on 18 March 2011, Inspector Ashley initiated a civil license action against petitioner under N.C. Gen.Stat. § 20-183.7B(a)(9), which prohibits the solicitation or acceptance of "anything of value to pass a vehicle...." On 2 June 2011, respondent-DMV served a Finding of Violation pursuant to N.C. Gen.Stat. 20-183.8F(a) on petitioner-Jiffy Lube.
 

 On 28 June 2011, a Notice of Charge for petitioner-Jiffy Lube was served on petitioner by the Director of the DMV for a Type I violation, which occurred 18 March 2011. The Notice of Charge proposed to suspend petitioner's license for 180 days. In addition, the Notice of Charge imposed a $250.00 civil penalty against petitioner. Jernigan was terminated and is no longer employed by petitioner.
 

 *419
 
 After receiving notice of the Type I violation, petitioner requested a hearing to appeal the violation to a DMV Hearing Officer. The matter was heard before DMV Hearing Officer Larry B. Greene, Jr. on 6 September 2012. The DMV Hearing Officer found Jernigan solicited money to pass the 2006 Lexus owned by Land when it would not have passed inspection if the window tint had been properly tested. The DMV Hearing Officer found that Jernigan's actions constituted a Type I violation. The DMV Hearing Officer then imputed the violation separately to petitioner, as the employer of Jernigan, pursuant to N.C. Gen.Stat. § 20-183.7A(c) : "A violation by a safety inspection mechanic is considered a violation by the station or self-inspector for whom the mechanic is employed." N.C.G.S. § 20-183.7A(c) (2013).
 

 The Official Hearing Decision and Order for the violation suspended petitioner's license for 180 days and assessed a $250.00 penalty against petitioner. Petitioner appealed this decision to respondent-DMV Commissioner pursuant to N.C. Gen.Stat. § 20-183.8G(e). On 4 December 2012, respondent-DMV Commissioner denied petitioner's appeal and upheld the DMV Hearing Officer's decision.
 

 Petitioner timely filed a Petition for Judicial Review, and a hearing was held in the Superior Court of Wake County. On 7 April 2014, the trial court issued a written memorandum containing the trial court's ruling, which was to deny the petition and uphold the DMV suspension and fine. On 17 April 2014, petitioner timely filed a Motion to Reconsider. The trial court upheld its prior ruling and the order affirming the DMV suspension and fine was signed, filed, and served on 23 January 2015.
 

 Despite upholding its prior ruling, in that same order, the trial court found that respondents did not timely serve petitioner with a Finding of Violation pursuant to N.C. Gen.Stat. § 20-183.8F(a). However, the trial court found that the requirement to serve the Finding of Violation within five days of completion of an investigation was a directory requirement rather than a mandatory one.
 

 *83
 
 The trial court also upheld its prior ruling that the violation of service requirements in N.C.G.S. § 20-183.8F(a) did not deprive the trial court of subject matter jurisdiction as petitioner waived this argument by not bringing it up below. Therefore, the trial court denied petitioner's Motion to Reconsider. Petitioner appeals.
 

 _________________________
 

 On appeal, petitioner argues that DMV's failure to comply with the statutory notice requirements of N.C. Gen.Stat. § 20-183.8F(a) are grounds for dismissal of the administrative action against Jiffy Lube. We agree.
 

 *420
 
 Article 4 of Chapter 150B defines the judicial review process, and, within that, N.C. Gen.Stat. § 150B-51(b) establishes the scope of review as follows:
 

 The court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
 

 (1) In violation of constitutional provisions;
 

 (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
 

 (3) Made upon unlawful procedure;
 

 (4) Affected by other error of law;
 

 (5) Unsupported by the substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
 

 (6) Arbitrary, capricious, or an abuse of discretion.
 

 N.C. Gen.Stat. § 150B-51(b) (2013).
 

 "In cases appealed from administrative tribunals, we review questions of law
 
 de novo
 
 and questions of fact under the whole record test."
 
 Diaz v. Div. of Soc. Servs.,
 

 360 N.C. 384
 
 , 386,
 
 628 S.E.2d 1
 
 , 2-3 (2006) (citation omitted).
 

 When determining whether an agency decision is arbitrary or capricious, or whether the agency decision is unsupported by substantial evidence in view of the entire record as submitted, this Court's standard of review is the "whole record test."
 
 See
 

 Crowell Constructors, Inc. v. N.C. Dep't of Env't, Health, & Natural Res.,
 

 107 N.C.App. 716
 
 , 719,
 
 421 S.E.2d 612
 
 , 613-14 (1992). "When utilizing the whole record test ... the reviewing court must examine all competent evidence (the whole record) in order to determine whether the agency decision is supported by substantial evidence."
 
 Mann Media, Inc. v. Randolph Cnty. Planning Bd.,
 

 356 N.C. 1
 
 , 14,
 
 565 S.E.2d 9
 
 , 17 (2002) (citation and quotation marks omitted).
 

 When a petitioner alleges that an agency violated his constitutional rights, acted in excess of the statutory authority or jurisdiction of the agency, or the agency decision is affected by other error of law,
 
 de novo
 

 *421
 
 review is the appropriate standard of review.
 
 See
 

 Brooks v. Rebarco, Inc.,
 

 91 N.C.App. 459
 
 , 463,
 
 372 S.E.2d 342
 
 , 344 (1988). "When the issue on appeal is whether a state agency erred in the interpretation of a statutory term, an appellate court may freely substitute its judgment for that of the agency and employ
 
 de novo
 
 review."
 

 Id.
 

 (quoting
 
 Brooks v. Grading Co.,
 

 303 N.C. 573
 
 , 580-81,
 
 281 S.E.2d 24
 
 , 29 (1981) ) (internal quotation marks omitted). Additionally, a reviewing court (the trial court, when sitting as an appellate court), may make findings at variance with an agency when it determines that the findings of the agency are not supported by substantial evidence.
 
 Scroggs v. N.C. Criminal Justice Educ. & Training Standards Comm'n,
 

 101 N.C.App. 699
 
 , 702-03,
 
 400 S.E.2d 742
 
 , 745 (1991) (citation omitted).
 

 Under the version of N.C. Gen.Stat. § 20-183.8F(a) applicable to this case,
 

 [w]hen an auditor of the Division finds that a violation has occurred that could result in the suspension or revocation of an inspection station license, a self-inspector license, a mechanic license, or the registration of a person engaged in the business of replacing windshields, the auditor must give the affected license holder written notice of the finding.
 
 The notice must be given within five business days after completion of the investigation that resulted in the discovery
 

 *84
 

 of the violation.
 
 The notice must state the period of suspension or revocation that could apply to the violation and any monetary penalty that could apply to the violation. The notice must also inform the license holder of the right to a hearing if the Division charges the license holder with the violation.
 

 N.C. Gen.Stat. § 20-183.8F(a) (2009) (emphasis added) (repealed by S.L. 2011-145, § 28.23B(a), eff. July 1, 2011).
 

 In order to resolve the ultimate issue raised by petitioner on appeal, this Court must first address three sub-issues: (1) whether the trial court's finding of fact regarding respondent's failure to timely serve petitioner with a Finding of Violation pursuant to N.C. Gen.Stat. § 20-183.8F(a) is supported by substantial evidence and should stand; (2) if indeed the trial court's finding of fact regarding respondent's failure to timely serve petitioner with a Finding of Violation is supported by substantial evidence, whether the language in N.C. Gen. Stat § 20-183.8F(a) regarding the time restrictions for notice is mandatory or directory; and (3) if the language in N.C. Gen.Stat. § 20-183.8F(a) is in fact mandatory, whether
 
 *422
 
 respondent's failure to comply with the notice requirement of the statute results in a lack of respondent-DMV's subject matter jurisdiction over this matter, and independently is grounds for dismissal of the charges and administrative action against petitioner.
 

 First, we agree with petitioner that respondents did not timely serve petitioner with a Finding of Violation pursuant to N.C. Gen.Stat. § 20-183.8F(a). Applying the "whole record test" to petitioner's claim, we find that the trial court's finding as to that issue is supported by substantial evidence.
 

 As stated above, the trial court, when sitting as an appellate court, may make findings at variance with an agency when it determines that the findings of the agency are not supported by substantial evidence.
 
 Scroggs,
 

 101 N.C.App. at 702-03
 
 ,
 
 400 S.E.2d at 745
 
 . In the Official Hearing Decision and Order, the Hearing Officer found that "[p]ursuant to N.C. Gen.Stat. § 20-183.8F, written notice of the complaint made was furnished to the licensee within the statutory timeline...."
 

 In reviewing the whole record, however, the trial court found that there was not competent or substantial evidence to support a finding by the Hearing Officer that DMV complied with N.C. Gen.Stat. § 20-183.8F(a). Specifically, Inspector Ashley's own testimony before the DMV Hearing Officer provided no evidence of any further investigative action pertaining to either the mechanic (Jernigan), or the station (petitioner Jiffy Lube), that took place after 25 March 2011. Therefore, it appears the investigation was completed as of 25 March 2011. Consequently, respondent-DMV's service on 2 June 2011 of the Finding of Violation was outside the five-day period required by statute.
 

 When asked to recount the events that led him to file the complaint against the station and the mechanic, Inspector Ashley recounted investigation attempts that occurred prior to and on the date of 25 March 2011. On 23 March 2011, Brenton Land, the individual who paid for the illegal inspection, made a voluntary statement, written by Land on a North Carolina Division of Motor Vehicles License and Theft Bureau official form. On 24 March 2011, Inspector Ashley charged Jernigan with felony soliciting in Wake County. On 25 March 2011, Jernigan made a voluntary statement from the Wake County Jail using the same NCDMV form that Land used.
 

 When asked what documents Inspector Ashley wanted to offer as evidence, Inspector Ashley presented only the statements of Land and Jernigan, taken on 24 and 25 March 2011, respectively. Inspector Ashley did not testify as to any separate investigation of Jiffy Lube, nor did
 
 *423
 
 respondent-DMV offer any evidence that the investigation went beyond the initiation of the civil license action on 18 March 2011, the filing of criminal charges on 24 March 2011, or the taking of Jernigan's statement on 25 March 2011.
 

 The Hearing Officer's Finding of Fact that DMV had satisfied the requirements of N.C. Gen.Stat. § 20-183.8F(a) was not supported by evidence in the record before it. The trial court's finding of fact that respondent-DMV did not timely serve the Finding of Violation, on the other hand, is based on competent
 
 *85
 
 evidence. From the record, it appears the investigation into this matter was completed as of 25 March 2011, once Jernigan was charged by DMV with felony soliciting. Once Jernigan, the safety-inspection manager employed by petitioner, was determined to have committed a violation, such violation was imputed to petitioner.
 
 See
 
 N.C.G.S. § 20-183.7A(c) (2013) ("A violation by a safety inspection mechanic is considered a violation by the station or self-inspector for whom the mechanic is employed."). There is no indication based on statutory requirements or evidence in the record that any additional investigation of petitioner was necessary or performed. Accordingly, we agree with the trial court's finding that respondents failed to timely serve petitioner with a Finding of Violation pursuant to N.C. Gen.Stat. § 20-183.8F(a).
 

 In determining whether the trial court correctly found that the requirement to serve a Finding of Violation within five days of the completion of an investigation under N.C. Gen.Stat. § 20-183.8F(a) is a directory requirement rather than a mandatory one, we review this issue
 
 de novo:
 
 When the issue is whether a state agency erred in the interpretation of a statutory term, a court may freely substitute its judgment for that of the agency and employ
 
 de novo
 
 review.
 
 Brooks,
 

 91 N.C.App. at 463
 
 ,
 
 372 S.E.2d at 344
 
 .
 

 The North Carolina Supreme Court has explained that:
 

 [i]n determining the mandatory or directory nature of a statute, the importance of the provision involved may be taken into consideration. Generally speaking, those provisions which are a mere matter of form, or which are not material, do not affect any substantial right, and do not relate to the essence of the thing to be done so that compliance is a matter of convenience rather than substance, are considered to be directory.... While,
 
 ordinarily, the word "must" and the word "shall," in a statute are deemed to indicate a legislative intent to
 

 *424
 

 make the provision of the statute mandatory, and a failure to observe it fatal to the validity of the purported action,
 
 it is not necessarily so and the legislative intent is to be derived from a consideration of the entire statute.
 

 State v. House,
 

 295 N.C. 189
 
 , 203,
 
 244 S.E.2d 654
 
 , 661-62 (1978) (emphasis added) (citations omitted) (internal quotation marks omitted). "As used in statutes, the word 'shall' is generally imperative or mandatory."
 
 State v. Johnson,
 

 298 N.C. 355
 
 , 361,
 
 259 S.E.2d 752
 
 , 757 (1979) (citing
 
 Black's Law Dictionary
 
 1541 (4th rev. ed.1968)).
 

 Additionally, this Court has stated that
 

 Mandatory provisions are jurisdictional, while directory provisions are not.... Whether the time provision ... is jurisdictional in nature depends on whether the legislature intended the language of that provision to be mandatory or directory.... Generally, statutory time periods are ... considered to be directory rather than mandatory unless the legislature expresses a consequence for failure to comply within the time period.
 

 In re B.M., M.M., An.M., & Al.M.,
 

 168 N.C.App. 350
 
 , 354,
 
 607 S.E.2d 698
 
 , 701 (2005) (internal citations and quotation marks omitted). Here, respondent argues that because the legislature provided no consequence for failing to timely serve a Finding of Violation in N.C.G.S. § 20-183.8F(a), the statute is "clearly" directory. We disagree.
 

 This Court has previously found that deadlines placed upon an administrative body subject to the Administrative Procedures Act ("APA") are mandatory where the statute involves an administrative proceeding that is penal in nature.
 
 In re
 

 Trulove,
 

 54 N.C.App. 218
 
 , 222,
 
 282 S.E.2d 544
 
 , 547 (1981). A statute which empowers a board or licensing agency to revoke a license is penal in nature.
 
 See
 

 Parrish v. N.C. Real Estate Licensing Bd.,
 

 41 N.C.App. 102
 
 , 105,
 
 254 S.E.2d 268
 
 , 270 (1979).
 

 In
 
 Trulove,
 
 this Court reversed a license suspension issued by the North Carolina State Board of Registration for Professional Engineers and Land Surveyors where the licensing board failed to conduct its hearing within the time period required by statute.
 
 Trulove,
 

 54 N.C.App. at 220, 224
 
 ,
 
 282 S.E.2d at 546, 548
 
 (involving N.C. Gen.Stat. § 89C-22(b) (1975), which required that "[a]ll charges, unless dismissed by the Board as
 
 *86
 
 unfounded or trivial,
 
 shall
 
 be heard by the Board within three months after the date on which they shall have been
 
 referred
 
 " (emphasis added)).
 
 *425
 
 The licensing board and process at issue in
 
 Trulove,
 
 like the DMV and process here, were governed by the fairness and notice provisions of the APA, N.C. Gen.Stat. § 150B
 
 et seq.
 
 Furthermore, the statute at issue in
 
 Trulove,
 
 like the statute at issue here, did not contain any consequences for the Board's failure to conduct the hearing within the three month timeline.
 
 See
 

 Trulove,
 

 54 N.C.App. at 220
 
 ,
 
 282 S.E.2d at 546
 
 . Although the statute at issue in
 
 Trulove
 
 contained no explicit consequences for the board's failure to hear cases within the three month timeframe, this Court recognized that where a statute contains language like " shall" and involves a proceeding that is penal in nature, statutory procedures are "mandatory [and] must be strictly followed."
 
 Id.
 
 at 220, 222,
 
 282 S.E.2d at 546-47
 
 .
 

 Just as in
 
 Trulove,
 
 the statute at issue here is penal in nature.
 
 See
 
 N.C.G.S. § 20-183.8F(a) ("When an auditor of the Division finds that a violation has occurred that could result in the
 
 suspension or revocation of an inspection station license
 
 ...." (emphasis added)). Furthermore, the same statute at issue here explicitly mentions that "[a] license issued to an inspection station ... is a substantial property interest...." N.C. Gen.Stat. § 20-183.8F(c).
 

 Here, as in
 
 Trulove,
 
 at issue is the potential loss of a substantial property interest-a license.
 
 See
 

 Trulove,
 

 54 N.C.App. at 219
 
 ,
 
 282 S.E.2d at 545
 
 . As noted above, this Court also did not require that any "dismissal" consequences be stated in the statute. Instead, because the
 
 Trulove
 
 case involved an administrative proceeding-specifically involving notice requirements for discipline against an occupational license holder-this Court recognized that the procedural requirements in the statute must be strictly followed and held that the Board acted without subject matter jurisdiction in hearing and ruling on the claim.
 
 Id.
 
 at 222,
 
 282 S.E.2d at
 
 547 ;
 
 cf.
 

 N.C. State Bd. of Educ. v. N.C. Learns, Inc.,
 

 231 N.C.App. 270
 
 , 277,
 
 751 S.E.2d 625
 
 , 630 (2013) (involving an agency's review period for an application submitted where the Board did not act on the application by the deadline, but concluding that "where a statute lacks specific language requiring an agency to take express action during a statutory review period, our Court has held that such statutory language is merely directory, rather than mandatory" (citation omitted)).
 

 Here, the statute contains the following language, in pertinent part: "the auditor
 
 must
 
 give the affected license holder written notice of the finding. The notice
 
 must
 
 be given within five business days after the completion of the investigation that resulted in the discovery of the violation." N.C.G.S. § 20-183.8F(a) (emphasis added). "It is well established that the word 'shall' is generally imperative or mandatory," and likewise,
 
 *426
 
 the word "must," like the word "shall," has generally been held to be mandatory as well: "The word 'shall' is defined as 'must' or used in laws, regulations, or directives to express what is mandatory."
 
 Internet E., Inc. v. Duro Commc'ns, Inc.,
 

 146 N.C.App. 401
 
 , 405-06,
 
 553 S.E.2d 84
 
 , 87 (2001) (quoting
 
 Webster's Collegiate Dictionary
 
 1081 (9th ed. 1991)).
 

 It is true that the N.C. Supreme Court has held that the words "must" or "shall" are not dispositive in the determination of whether or not a particular provision is mandatory rather than directory; "legislative intent is to be derived from a consideration of the entire statute."
 
 House,
 

 295 N.C. at 203
 
 ,
 
 244 S.E.2d at 662
 
 . In looking to the legislative intent behind N.C.G.S. § 20-183.8F, in the version of the statute that immediately preceded the version at issue in this case, the DMV was required to issue a Finding of Violation "within five business days
 
 after the violation occurred.
 
 " N.C. Gen.Stat. § 20-183.8F(a),
 
 2001 N.C. Sess. Laws 2001
 
 -504, s. 17 (emphasis added). The statute was amended so that the start of the five day notice window would begin at the end of the DMV's investigation, rather than beginning when the violation occurred.
 
 See
 
 id.
 

 Notably, our legislature kept the mandatory notice process and the mandatory language ("must") regarding the five-day notice window.
 
 See
 
 N.C. Gen.Stat. § 20-183.8F(b).
 

 *87
 
 By moving the start of the five-day notice window to the end of the DMV's investigation rather than leaving it at the date of the discovery of a violation, it appears that our legislature intended to give the DMV adequate time to complete its investigations in order to comply with this mandatory notice requirement. Such a change would not be necessary if the notice provision were not mandatory, or could be disregarded, as respondents contend. Additionally, the retention of the word "must" along with the five-day notice requirement further evidences our legislature's desire to continue the mandatory notice requirement that affects "a substantial property interest."
 

 In addition, respondents' argument regarding the subsequent deletion of N.C. Gen.Stat. § 20-183.8F(a), effective 1 July 2011, is without merit. Respondents argue that "[i]f this statute was jurisdictional and contained mandatory action, clearly the legislature would not delete this subsection in its entirety". Respondents assert that this action by our General Assembly shows that this statute was "merely a courtesy," which had no effect on future proceedings. We disagree. If, in fact, the statute were directory, a "mere courtesy," as respondents argue, there would be no need for the legislature to delete it in its entirety. Rather than demonstrating that N.C. Gen.Stat. § 20-183.8F(a) is directory, if any conclusion is to be reached, our legislature's complete deletion of this
 
 *427
 
 subsection undercuts respondents' argument and demonstrates that it was more likely intended to be mandatory.
 
 [1]
 

 The plain language of N.C. Gen.Stat. § 20-183.8F(a), setting forth the penal nature of the proceeding it involves, and the recent deletion of subsection (a) from the statute by our legislature, support this Court's determination that the timing and notice requirements of N.C. Gen.Stat. § 20-183.8F(a) are mandatory, not directory.
 

 Based on our conclusion that the language of N.C. Gen.Stat. § 20-183.8F(a) is mandatory and not directory, we finally reach the ultimate question at issue: whether respondents' failure to comply with the statutory notice requirements of N.C.G.S. § 20-183.8F(a) resulted in lack of subject matter jurisdiction and is grounds for dismissal of the administrative action against petitioner. Because the notice requirements of N.C.G.S. § 20-183.8F(a) provide the basis for the DMV's subject matter jurisdiction, and because those requirements are mandatory rather than directory and therefore must be strictly followed, respondents' failure to comply with mandatory notice requirements is grounds for dismissal and for the agency's order to be vacated.
 
 See
 

 Trulove,
 

 54 N.C.App. at 222
 
 ,
 
 282 S.E.2d at 547
 
 .
 

 Respondents argue that petitioner waived its argument regarding the statutory violation because petitioner "improperly raised questions concerning the Finding of Violation for the first time after the fact-finding administrative decision was entered and after ... [p]etitioner was informed that no new evidence would be considered in the Commissioner's review."
 
 See
 

 *428
 
 N.C. Gen.Stat. § 20-183.8G(e) (2014) ("The procedure set by the Division governs the review by the Commissioner
 
 *88
 
 of a decision made by a person designated by the Commissioner.");
 

 id.
 

 § 20-183.8G(f) ("Upon the Commissioner's review of a decision made after a hearing ... on a Type I, II, or II violation by a license holder, the Commissioner must uphold any monetary penalty, license suspension, license revocation, or warning ... if the decision is based on evidence presented at the hearing that supports the hearing officer's determination that the ... license holder committed the act for which the monetary penalty, license suspension, license revocation, or warning was imposed."). However, subject matter jurisdiction cannot be waived and may be presented at any time.
 
 Hart v. Thomasville Motors, Inc.,
 

 244 N.C. 84
 
 , 90,
 
 92 S.E.2d 673
 
 , 678 (1956).
 

 Petitioner did not present any new evidence to respondent-DMV Commissioner, but merely raised a legal challenge to the finding and conclusion the DMV Hearing Officer made based on the evidence presented. Specifically, petitioner challenged the Official Hearing Decision and Order from 6 September 2012 which erroneously found that "[p]ursuant to N.C. Gen.Stat. § 20-183.8F, written notice of the complaint made was furnished to the licensee within the statutory timeline...." All evidence relied upon by petitioner in making its legal argument regarding lack of subject matter jurisdiction was namely Inspector Ashley's testimony as to when the investigation was completed and the date of issuance of the Finding of Violation, all of which were included in the record before respondent-DMV Commissioner. These items were not new evidence as respondent-DMV claims.
 

 The trial court erred in finding that petitioner's statutory violation argument was waived as petitioner properly raised this issue (1) in its original petition for judicial review and motion for stay, temporary restraining order, and preliminary injunction, (2) in its brief supporting its appeal from the Hearing Officer's order suspending petitioner's license, (3) before respondent-DMV Commissioner issued the final agency decision, and (4) before the trial court. Regardless, petitioner's argument was central to the issue of whether respondent-DMV had subject matter jurisdiction over the case and could have been raised at any time. Accordingly, we reverse the judgment of the trial court and remand with instructions to vacate the final agency decision of respondent-DMV.
 

 REVERSED AND REMANDED.
 

 Judges CALABRIA and ZACHARY concur.
 

 [1]
 

 Subsection (a), which was titled "Finding of Violation," of N.C.G.S. § 20-183.8F has been repealed in its entirety by S.L. 2011-145, § 28.23B(a), eff. July 1, 2011. By repealing subsection (a) "Finding of Violation," the General Assembly did away with the mandatory provision which required an auditor to give notice that a violation had been found. Subsection (b), which has not been repealed and which is titled "Notice of Charges," states that, instead of requiring notice upon a
 
 finding of a violation,
 
 notice must be given when the Division
 
 decides to charge
 
 an inspection station: "When the Division decides to charge an inspection station, a self-inspector, or a mechanic with a violation that could result in the suspension or revocation of the person's license, the Division
 
 must
 
 deliver a written statement of the charges to the affected license holder." N.C.G.S. § 20-183.8F(b) (2013) (emphasis added). Thus, N.C. Gen.Stat. § 20-183.8F still maintains a mandatory notice provision. All that has changed is what triggers the mandatory notice provision. However, no time frame is provided in subsection (b) of the statute for how long DMV has to deliver a written statement of the notice of charges once it has determined that a violation occurred, but before deciding to charge the violation.
 
 Compare
 
 id.
 

 (mandatory notice provision triggered by
 
 decision to charge), with
 
 N.C.G.S. § 20-183.8F(a), repealed by
 
 2011 N.C. Sess. Laws 2011
 
 -145, § 28.23B(a) (mandatory notice provision triggered by
 
 finding of violation
 
 ).